**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

2013 JAN -8 PM 12: 20
US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA
FILED

UNITED STATES OF AMERICA for the use and benefit of SOUTHERN POWER & CONTROLS CORPORATION,

Plaintiff,

vs. Case No.: 6-13-CV-39-ORL-19KRS

AXIOS CONSTRUCTION SERVICES, LLC, BRASFIELD & GORRIE, LLC, FEDERAL INSURANCE COMPANY and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,

Defendants.
_______________________________________/

**COMPLAINT**

Plaintiff UNITED STATES OF AMERICA for the use and benefit of SOUTHERN POWER & CONTROLS CORPORATION ("Southern Power"), by its undersigned attorneys, sues defendants BRASFIELD & GORRIE, LLC ("B&G"), FEDERAL INSURANCE COMPANY ("Federal") and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA ("Travelers") (Federal and Travelers will be collectively referred to as "Sureties"), and as nominal defendant AXIOS CONSTRUCTION SERVICES, LLC, ("Axios"), and states as follows:

**Jurisdiction and Venue**

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and the provisions of the Miller Act, 40 U.S.C. § 3133(b). This Court has pendent and supplemental jurisdiction over the state law claims alleged in this complaint pursuant to 28 U.S.C. § 1367.

2. The contract at issue was to be performed in Orange County, Florida. Venue therefore lies in the United States District Court for the Middle District of Florida pursuant to 40 U.S.C. § 3133(b)(3)(B) and 28 U.S.C. § 1391(b)(2).

**Parties**

3. Southern Power is a Florida corporation with its principal place of business in Tampa, Florida.

4. Axios is a Florida limited liability company with its principal place of business in Orlando, Florida.

5. B&G is a Delaware limited liability company which is authorized to transact business in the State of Florida.

6. Federal is an Indiana corporation that is authorized to, and at all times relevant hereto was engaging in the surety business in Florida.

7. Travelers is a Connecticut corporation that is authorized to, and at all times relevant hereto was engaging in the surety business in Florida.

**Statement of Facts**

8. On or about November 9, 2009, B&G entered into a contract (the "Prime Contract") with the Department of Veterans Affairs (the "Owner") for the construction of improvements known as the "Orlando VA Medical Center Warehouse and Parking Garages" at the Lake Nona Medical City in Orlando, Orange County, Florida (the "Project").

9. On or about November 11, 2009, B&G, as principal, and Sureties, as surety, furnished a Payment Bond (the "Bond") in the amount of $29,953,159.00. Under the terms of the Bond, Sureties agreed to be bound, jointly and severally, with B&G to make payment to all persons having a direct relationship with B&G or its subcontractors who furnished labor,

material or both in connection with the Project. A copy of the Bond is attached hereto as Exhibit "A."

10. In anticipation of submitting its bid on the Project, B&G entered into discussions with potential subcontractors, including Southern Power, in 2008 and 2009. As a consequence of those discussions, Southern Power submitted a proposal to perform the electrical work on the Project to B&G on October 5, 2009.

11. On November 20, 2009, Southern Power received a formal letter of intent from B&G stating that B&G intended to use Southern Power to provide electrical work on the Project. B&G also stated that it intended to partner with a small business entity [Axios] and that B&G would prepare an appropriate subcontract for execution.

12. On February 4, 2010, Southern Power executed a B&G drafted contract dated December 23, 2009 (the "Subcontract") whereby Southern Power agreed to provide all electrical work called for in the Plans and Specifications of the Project. A copy of the Subcontract is attached hereto as Exhibit "B."

13. The Subcontract did not accurately reflect the realities of the Project. Material inaccuracies in the Subcontract included, but are not limited to, the following:

a. The Subcontract represents that Axios had entered into a contract with the Owner, when in fact B&G, not Axios, had entered into the Prime Contract with the Owner;

b. The Subcontract indicates that Axios was contracting with Southern Power, when in fact B&G was the real party in interest contracting with Southern Power;

c. The Subcontract represents that Axios would prepare the Project schedule, when in fact B&G, not Axios, prepared the Project schedule;

d. The Subcontract represents that Axios could issue written changes in the work, when in fact B&G, not Axios, prepared and issued to Southern Power written changes in the work;

e. The Subcontract represents that Axios could, under certain circumstances, supplement Southern Power's forces working on the Project, when in fact B&G, not Axios, supplemented Southern Power's forces;

f. The Subcontract requires that Southern Power provide Payment and Performance Bonds on Axios' forms when in fact the bonds were required to be submitted on B&G forms;

g. Axios performed no work at the Project site, was not present at the Project site during the performance of work on the Project and, on limited occasions, acted as a conduit passing correspondence, pay applications, payments and similar documents back and forth between Southern Power and B&G;

h. Axios did not participate in job site meetings between Southern Power and B&G; and

i. On information and belief, Axios provided no labor, materials, equipment, supplies, supervision, or management to the construction of the Project.

14. For the foregoing reasons, Axios' role and function on the Project was as the agent of B&G, a disclosed principal. The identification of Axios as the "Contractor" in the Subcontract was a straw man and a sham; there was never any intention on the part of B&G to impose a contractual obligation for the electrical work on Axios, but rather upon Southern Power; and that B&G's purpose of using Axios' name was to make it appear to the Owner that a small business entity was to be a subcontractor on the Project. B&G, not Axios, was the

"Contractor" and the real party in interest with respect to the Subcontract. Accordingly, Axios is named herein as a nominal defendant.

15. Beginning in December 2009 and continuing through February 2012, Southern Power fully performed its obligations under the Subcontract for furnishing labor and material in connection with electrical systems for the Project.

16. The first of the labor and material was furnished by Southern Power on December 28, 2009, and the last of the labor and material was furnished on February 13, 2012, all of which has been actually incorporated into the Project and accepted by B&G and the Owner.

17. B&G has failed to pay Southern Power for the work performed under the Subcontract, and more than 90 days have passed since the failure to pay.

18. Because Southern Power was effectively in privity of contract with B&G, Southern Power was not required to serve a Notice of Nonpayment under the Bond. Nevertheless, on September 15, 2011, and again on September 29, 2011, Southern Power submitted Notices of Nonpayment to Axios, B&G and the Sureties. Copies of the Notices are attached hereto as Composite Exhibit "C." In response to the written request of Federal, as lead surety, Southern Power submitted a Proof of Claim on October 24, 2011. A copy of the Proof of Claim is attached hereto as Exhibit "D."

19. Southern Power's suit has been timely filed within one (1) year of the date of last furnishing of labor and material by Southern Power to the Project.

20. All conditions precedent to the relief demanded herein have been performed, have occurred, or have been waived.

## Count I
## Breach of Contract

21. Southern Power realleges paragraph nos. 1 – 5, 8, 10 – 17 and 20 above.

22. B&G materially breached the express, implied and constructive terms of the Subcontract by, among other things:

a. Providing defective and constantly changing Plans and Specifications;

b. Failing to make timely and complete payments to Southern Power;

c. Failing to process an unusually large number of change orders in an equitable and timely manner;

d. Substantially delaying and interfering with Southern Power's work, resulting in a completion date 318 days later than the completion date established in the Subcontract, and without any provision for Southern Power's increased out of pocket costs, including but not limited to extended home office overhead, general and administrative expenses, and other costs attributable to delayed completion;

e. Accelerating the work;

f. Failing to properly supervise, schedule and coordinate Southern Power's work with that of other subcontractors on the Project;

g. Improper and excessive inspection of the work; and

h. Failing to exercise reasonable care in the management and administration of the Project and the Subcontract work.

23. As a direct and proximate result of the above material breaches of the Subcontract, Southern Power has been damaged as follows:

a. payment for work performed which is due, owing and unpaid; and

b. compensation for Southern Power's increased out-of-pocket costs caused by the delay for labor and material actually furnished in performing its contractual obligations, which are justly due.

WHEREFORE, Southern Power demands judgment for damages against B&G, together with interest, the costs of this action, and such other and further relief as is provided by law.

**Count II**
**Quantum Meruit**

24. Southern Power realleges paragraph nos. 1, 3 – 5, 8, 11, 16, and 20 above.

25. During the period of December 28, 2009 through February 13, 2012, Southern Power furnished to B&G labor and materials in connection with electrical systems for the Project.

26. Southern Power is entitled to recover the reasonable value of the labor and material furnished to B&G, under a theory of *quantum meruit*, because:

a. Southern Power furnished the labor and material with the expectation of payment therefore;

b. B&G voluntarily accepted the labor and material furnished by Southern Power and received a benefit therefrom in an amount equal to the reasonable value of such labor and material; and

c. equity and good conscience requires that B&G pay Southern Power the reasonable value of the labor and material furnished.

27. The reasonable value of the labor and material furnished by Southern Power to B&G which remains unpaid is in an amount in excess of $2,800,000.00.

WHEREFORE, Southern Power prays that the Court enter a judgment in its favor and against B&G for the reasonable value of the labor and materials furnished by Southern Power,

together with interest, the costs of this action, and such other and further relief as is provided by law.

**Count III**
**Unjust Enrichment**

28. Southern Power realleges paragraph nos. 1, 3 – 5, 8, 11 – 14, 16 and 20 above.

29. During the period of December 28, 2009 through February 13, 2012, Southern Power conferred a benefit on B&G by furnishing labor and materials in connection with electrical systems for the Project.

30. B&G knowingly and voluntarily accepted and retained the benefits conferred by Southern Power in furnishing labor and materials for the improvement of the Owner's Project.

31. Under these circumstances, it would be inequitable for B&G to retain the benefits conferred upon it by Southern Power, and it would thereby be unjustly enriched to the detriment of Southern Power, if and to the extent that B&G is not required to pay Southern Power the reasonable value of the labor and materials provided.

WHEREFORE, Southern Power prays that the Court enter a judgment in its favor and against B&G for the reasonable value of the labor and materials furnished by Southern Power, together with interest, the costs of this action, and such other and further relief as is provided by law.

**Count IV**
**Miller Act Payment Bond**

32. Southern Power realleges paragraph nos. 1 through 20 above.

33. B&G, Federal and Travelers are obligated, pursuant to the Bond, to pay Southern Power for the labor and material which Southern Power furnished in the prosecution of the work provided for in the Subcontract, and for which B&G failed to make payment.

34. B&G, Federal and Travelers have failed to fulfill their obligations under the Bond to pay Southern Power for the labor and material which Southern Power furnished in the prosecution of the work provided for in the Subcontract, and for which B&G failed to make payment.

35. Southern Power is entitled to (a) payment for work performed, and (b) its increased out-of-pocket costs caused by the delay for labor and material actually furnished in performing its contractual obligations from B&G, Federal and Travelers, jointly and severally, pursuant to the Miller Act, 40 U.S.C. § 3133.

WHEREFORE, Southern Power demands judgment for damages against B&G, Federal and Travelers, jointly and severally, together with interest, the costs of this action, and such other and further relief as is provided by law.

CAREY, O'MALLEY, WHITAKER & MUELLER, P.A.
712 South Oregon Avenue
Tampa, Florida 33606-2543
Ph.: (813) 250-0577
Fax: (813) 250-9898
Attorneys for Southern Power and Controls Corporation

By:____________________________
Michael R. Carey
Florida Bar No. 259187
mcarey@cowmpa.com
Richard B. Campbell
Florida Bar No. 825662
rcampbell@cowmpa.com